UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NAVIGATION HOLDINGS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> ALEX MOLAVI, et al., <br><br> Defendants. | Case No. 19-CV-02644-LHK <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: Dkt. No. 38 |

Defendants bring the instant motion, ECF No. 38, to dismiss Plaintiffs' First Amended Complaint, ECF No. 31 ("FAC"). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendants' motion.

## I. BACKGROUND

Plaintiff Primrose Alloys, Inc. ("Primrose") is a California corporation with its principal place of business in Burlingame, California. FAC ¶ 1. Plaintiff Navigation Holdings, LLC, d/b/a Xi Dong Partners ("Xi Dong"), a subsidiary of Primrose, is a Delaware corporation with its principal place of business in Burlingame, California. *Id.* ¶¶ 2, 18. Primrose and Xi Dong (collectively, "Plaintiffs") work in the supply of "high quality aluminum alloy products," *id.* ¶ 13,

which Defendants describe as a "brokerage" between alloy manufacturers and customers, Mot. at 1.

Defendant Alex Molavi was hired by Primrose as a Vice President to establish Xi Dong as a new subsidiary of Primrose. *Id.* ¶ 18. Molavi eventually served as President for Xi Dong, and, in this capacity, Molavi was charged with negotiating agreements with customers and generating new business. *Id.* ¶¶ 18, 19. In August 2014, Molavi negotiated an agreement between Xi Dong and Defendant TSA Tung Shin International Co., Ltd. ("Tung Shin"), a Vietnamese corporation. *Id.* ¶¶ 6, 23. Under the agreement, Tung Shin would be Xi Dong's exclusive supplier in Vietnam for aluminum products, and Tung Shin would only sell Tung Shin's aluminum products to Xi Dong in the United States. *Id.* ¶ 23.

Plaintiffs allege that, while Molavi was still employed with Plaintiffs, Molavi began to siphon business away from Plaintiffs and toward Defendant U.S. Metal Imports, LLC ("U.S. Metal"). *Id.* ¶¶ 5, 27–29. Around September 2017, while Molavi was still employed with Plaintiffs, Molavi allegedly formed U.S. Metal as a California company and listed himself as its Chief Executive Officer. *Id.* ¶ 29. By March 2018, Molavi terminated his employment with Plaintiffs and began working for Tung Shin. *Id.* ¶¶ 30, 31. Working with Defendant Sheng Rui Liu, Export Sales Manager for Tung Shin, *id.* ¶ 7, and Defendant Chin Ling Liao,[1] owner and President of Tung Shin, *id.* ¶ 8, Molavi began to secure business based upon confidential information and trade secrets Molavi had taken from Plaintiffs, *id.* ¶ 36. In September 2018, Molavi formed TSA Metals, Inc. ("TSA") as a California subsidiary of Tung Shin to serve as the "United States sales arm." *Id.* ¶¶ 37–38.

Accordingly, on May 15, 2019, Xi Dong filed suit in this Court. ECF No. 1. On August 29, 2019, the parties stipulated to allow Xi Dong to file the First Amended Complaint and add Primrose as a plaintiff. ECF No. 31 ("FAC").

On October 7, 2019, Defendants Molavi, U.S. Metal, Tung Shin, and TSA filed the instant

---

[1] Defendant Liao's name was misspelled in the First Amended Complaint. *See* ECF No. 58 at 1.

2
Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1  motion to dismiss the First Amended Complaint. ECF No. 38 ("Mot."). On October 21, 2019,
2  Plaintiffs filed an opposition. ECF No. 40 ("Opp'n"). On October 28, 2019, Defendants filed a
3  reply. ECF No. 46 ("Reply").

Because Defendants Liu and Liao had yet to be served with the summons and complaint at the time the instant motion was filed, Liu and Liao were not originally parties to the motion. However, Liu and Liao have since filed their motion to dismiss for lack of personal jurisdiction, ECF No. 58, in which they also join the arguments raised in the instant motion to dismiss, *id.* at 1. Accordingly, because all Defendants have joined the arguments raised in the instant motion, the Court refers generally to "Defendants" throughout this Order.

## II. LEGAL STANDARD

### A. Dismissal Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.

3

1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

## B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III. DISCUSSION

Plaintiffs assert seven claims against Defendants: (1) misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA"), FAC ¶¶ 39–52; (2) misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), *id.* ¶¶ 53–89; (3) intentional interference with actual and prospective economic advantage, *id.* ¶¶ 66–75; (4) negligent interference with actual and prospective economic advantage, *id.* ¶¶ 76–81; (5) breach of a confidentiality agreement, *id.* ¶¶ 82–87; (6) breach of fiduciary duty, *id.* ¶¶ 88–94; and (7) breach of an exclusive supply agreement, *id.* ¶¶ 95–103.

Defendants' move to dismiss at least portions of all seven claims. The Court thus

4
Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

addresses each claim in turn.

### A. Claims One and Two: Trade Secret Misappropriation

Plaintiffs bring two claims based on trade secrets: Plaintiffs' first claim, misappropriation of trade secrets under DTSA, pursuant to 18 U.S.C. § 1836(b); and Plaintiffs' second claim, misappropriation of trade secrets under CUTSA, pursuant to California Civil Code section 3426 *et seq.* FAC ¶¶ 39–65. Plaintiffs assert both claims against all defendants. *Id.*

Defendants raise three arguments supporting dismissal of the trade secret misappropriation claims. First, Defendants argue that Plaintiffs fail to sufficiently plead the alleged trade secrets. Mot. at 6–8. Second, Defendants argue that Plaintiffs fail to adequately allege Defendants' knowledge to support claims of indirect misappropriation. Reply at 5–7. Third, Defendants argue that the claims fail to sufficiently distinguish the alleged acts of the various defendants. Mot. at 8–9. The Court considers each of Defendants' arguments in turn below.

#### 1. Plaintiffs adequately allege trade secrets.

Defendants argue that Plaintiffs have failed to adequately allege their trade secrets. Mot. at 7. The Court disagrees.

"Courts have held that the DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880–81 (N.D. Cal. 2018). Specifically, to allege a trade secret, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018); *see also Space Data Corp.*, 2017 WL 5013363, at *2 (same). However, "a plaintiff need not 'spell out the details of the trade secret.'" *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-CV-01409-EJD, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015).

Defendants go further. They urge the Court to find that Plaintiffs fail to state a claim for trade secret misappropriation because Plaintiffs do not "distinguish the trade secrets they allege

5

were misappropriated from the more nebulous, larger bucket of confidential information." Reply at 3. Such a rule is not supported by case law, and Defendants do not cite any cases that have dismissed a trade secret misappropriation claim for this reason. Instead, Defendants cite cases holding that tort claims based on confidential information, rather than trade secrets, may be superseded by CUTSA. *Id.* (citing, for example, *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012)). These cases do not discuss or augment the standard for pleading a trade secret; instead, they analyze tort claim pleading in the context of CUTSA supersession. *See, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 1059, 1064 (N.D. Cal. 2017). Thus, the Court need not decide on a motion to dismiss whether some parts of the alleged trade secret may, after discovery, not qualify as a trade secret. Instead, a plaintiff need only describe the alleged trade secret with sufficient detail to, for example, "separate [the trade secret] from matters of general knowledge." *See Vendavo*, 2018 WL 1456697, at *4.

Here, the Court concludes that Plaintiffs have adequately alleged Plaintiffs' trade secrets. Plaintiffs assert two categories of trade secrets: 1) client information, FAC ¶ 16(a); and 2) a "specialized process for anodizing unfinished alloy tubes, before machining, for the aerospace industry," to which the Court will refer as the "anodizing process," *id.* ¶ 16(b). The Court addresses each category of alleged trade secret in turn.

### a. Client Information

First, the Court finds that Plaintiffs' description of Plaintiffs' client information sufficiently alleges a trade secret. The Ninth Circuit has held that client information may qualify as a trade secret. For example, in *Gallagher Benefit Svcs., Inc. v. De La Torre*, the Ninth Circuit affirmed a district court's finding that "[Plaintiff's] customer-related information, such as its customers' key contacts and preferences, was a trade secret" under CUTSA. 283 F. App'x 543, 545–46 (9th Cir. 2008); *see also MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (agreeing that plaintiff's customer database constituted a trade secret).

Nonetheless, to state a claim for trade secret misappropriation, a plaintiff must still describe the client information in more than broad and conclusory terms. For example, in

6
Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

*Vendavo*, the court dismissed a plaintiff's trade secret claim because plaintiff did not "plead[] sufficient facts to show plausible misappropriation of trade secrets." 2018 WL 1456697, at *4. The plaintiff had broadly asserted that its trade secrets "include information not expressly covered by its patents." *Id.* at *3. The plaintiff merely elaborated that is trade secrets included "source code, customer lists and customer related information, pricing information, vendor lists and related information, marketing plans and strategic business development initiatives, 'negative knowhow' learned through the course of research and development, and other information related to the development of its price-optimization software." *Id.* The court found that this allegation was insufficient because, rather than alleging any specific trade secrets, the plaintiff had merely "set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated here." *Id.* at *4. Because the complaint only set forth "conclusory and generalized allegations," the court found the allegations insufficient to state a claim for trade secret misappropriation. *Id.*

Here, the Court finds that Plaintiffs' description of their client information sufficiently alleges a trade secret. Plaintiffs spell out this client information in detail:

> Plaintiffs' clientele includes key players in the metal alloy industry, including specialized mills, decision makers at various aerospace, medical and automobile companies, and specialized distributors of refined metals, as well as hundreds of engineers and industrial designers who use services to procure specialized aluminum alloys. Plaintiffs maintain confidential information about their clients in their files and databases. This information is not only a list of potential clients, but a compilation of price information about proven clients that often includes each client's name, address, telephone number, contact person and private email address. Plaintiffs' database contains client information that Plaintiffs have gathered over the entire history of their operations, which span not only many years but hundreds of thousands of hours of research, including prior order/pricing information. Many of the clients are regular and frequent consumers of Plaintiffs' services and have been so for years.

FAC ¶ 16(a). This description of client information stands in stark contrast to the plaintiff's description in *Vendavo*, which merely set forth broad categories of confidential information and failed to identify what specifically had been misappropriated. *See* 2018 WL 1456697, at *4. The Court finds that Plaintiffs adequately "separates [Plaintiffs' client information] from matters of

7

Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

general knowledge." *See id.* (quoting *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012)).

### b. Anodizing Process

Similarly, the Court finds that Plaintiffs' description of its anodizing process sufficiently alleges a trade secret.

"[F]ederal courts in the Ninth Circuit look to *Diodes* for guidance on the applicable pleading standard for claims brought under the CUTSA."[2] *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13–cv–02965 SC, 2013 WL 5770542, at *5 n.1 (N.D. Cal. Oct. 24, 2013) (citing *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (1968)). In *Diodes*, the California Court of Appeal held that, for trade secrets "in the form of a manufacturing process," the plaintiff must "supply sufficient data concerning the process, without revealing the details of it, to give both the court and the defendant reasonable notice of the issues which must be met at the time of trial and to provide reasonable guidance in ascertaining the scope of appropriate discovery." 260 Cal. App. 2d at 253. There, the complaint had merely alleged a "so-called 'secret process,'" with nothing more than a "hint that it had something to do with the manufacture of diodes." *Id.* at 251.

By contrast to the *Diodes* plaintiff, Plaintiffs describe their alleged anodizing process in detail:

> Xi Dong developed a specialized process for anodizing prefinished alloy tubes, saving critical time and money for products going into commercial aerospace seating programs in Europe, Asia and the United States. Xi Dong has established itself as the only distributor for these specialized products in the aerospace industry. Anodized tubing is highly resistant to corrosion and requires specific equipment to complete the process. Due to cost constraints, tubing is generally shaped, cut, and machined prior to the anodizing process; however, this process traditionally adds significant time to the production. To rectify this issue and create cost effective, prefinished, anodized tubes, Xi Dong identified specific vendors that had the appropriate equipment to anodize aluminum alloy tubing certified for aerospace applications. After developing the ability to procure these specialized products in bulk, Xi Dong then used its sales force to market products and develop a customer base. Xi Dong has limited its production to a select group of specific mills in order to maintain the secrecy of its proprietary process. In addition, Plaintiffs maintain a

---

[2] As stated above, "DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets." *Alta Devices, Inc.*, 343 F. Supp. 3d at 880–81.

database of the names, and addresses of the customers whose needs can take advantage of these specialized products.

FAC ¶ 16(b). Defendants protest that this description is "inadequate to separate the claimed trade secrets from general knowledge," because "anodizing has been used on an *industrial scale* since 1923." Mot. at 7. Yet, Plaintiffs claim that their specialized, proprietary process improves upon the standard anodizing process, and that Plaintiffs have taken efforts to "maintain the secrecy" of this process. *See* FAC ¶ 16(b). On a motion to dismiss, the Court must "accept factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. The Court declines Defendants' invitation to engage in factfinding on a motion to dismiss to determine whether Plaintiffs' anodizing process is in fact widely known. As such, the Court finds that Plaintiffs have adequately pleaded anodizing process as a trade secret.

### 2. Plaintiffs do not adequately plead the knowledge of Defendants other than Molavi.

Defendants argue that Plaintiffs fail to allege any indirect trade secret misappropriation because they do not plead facts showing that Defendants (other than Molavi) knew or had reason to know that any information that was appropriated constituted a trade secret. Reply at 5–7. The Court agrees.

Courts distinguish between direct trade secret misappropriation claims and indirect trade secret misappropriation claims, depending on whether a plaintiff alleges that a defendant obtained the trade secrets directly from the plaintiff or indirectly "from someone other than plaintiff." *See Heller v. Cepia, L.L.C.*, No. C 11-01146 JSW, 2012 WL 13572, at *6 (N.D. Cal. Jan. 4, 2012), *aff'd on different grounds*, 560 F. App'x 678 (9th Cir. 2014). To state a claim for direct trade secret misappropriation under DTSA[3] or CUTSA, "a plaintiff must allege (1) that it is the owner of a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that it was damaged by the defendant's actions." *Alta Devices, Inc.*, 343 F. Supp. 3d at 880–81 (citing *Space*

---

[3] In addition to these elements, the DTSA requires that the misappropriation have occurred or continued to occur on or after May 11, 2016. *See Alta Devices, Inc.*, 343 F. Supp. 3d at 877.

9
Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

*Data Corp. v. X*, No. 5:16-CV-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)). Plaintiffs' only claim of direct misappropriation is alleged against Molavi, *see* FAC ¶¶ 39–65, and Defendants do not challenge this claim, *see* Reply at 5.

By contrast, Plaintiffs assert that the remaining Defendants indirectly misappropriated Plaintiffs' trade secrets through Molavi. *See* FAC ¶¶ 39–65. To state a claim for indirect trade secret misappropriation, a plaintiff must allege facts showing that a defendant:

> (a) knew or had reason to know before the use or disclosure that the information was a trade secret and knew or had reason to know that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it; or (b) knew or had reason to know it was a trade secret and that the disclosure was a mistake."

*Cal. Police Activities League v. Cal. Police Youth Charities, Inc.*, No. C 08-1991 PJH, 2009 WL 537091, at *3 (N.D. Cal. Mar. 3, 2009). Courts have found the knowledge element sufficiently alleged where the plaintiff pleads facts to substantiate the defendant's knowledge. For example, in *Genentech,* the plaintiff alleged that the defendant received a report "clearly labeled" with the plaintiff's name and "clearly marked 'Confidential' and 'Internal Only.'" *Genentech, Inc. v. JHL Biotech, Inc.*, No. C 18-06582 WHA, 2019 WL 1045911, at *12 (N.D. Cal. Mar. 5, 2019). Similarly, in *Wang*, the plaintiff alleged that defendant had been told during a meeting that the information was the subject of a pending patent application, which the court noted was "usually confidential until published." *Wang v. Palo Alto Networks, Inc.*, No. C 12-05579 WHA, 2013 WL 415615, at *3 (N.D. Cal. Jan. 31, 2013).

Here, Plaintiffs fail to adequately allege Defendants' knowledge. Plaintiffs make a conclusory assertion that Defendants "had reason to know that the confidential information and trade secrets were acquired under circumstances giving rise to the duty to maintain their secrecy or limit their use." FAC ¶ 47. But this assertion is devoid of any factual substantiation of Defendants' knowledge. *Compare id., with Genentech*, 2019 WL 1045911, at *12. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Accordingly, the Court GRANTS Defendants' motion to dismiss the trade secret

10

Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

misappropriation claims as to Defendants U.S. Metal, TSA, Tung Shin, Liu, and Liao. Plaintiffs may be able to plead additional facts to substantiate Defendants' knowledge. Because amendment would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants Plaintiffs leave to amend. *See Leadsinger*, 512 F.3d at 532.

### 3. Plaintiffs do not adequately allege the acts of each Defendant.

Finally, although the court has dismissed the trade secret misappropriation claims as to each Defendant except for Molavi, the Court addresses Defendants' final argument that Plaintiffs fail to sufficiently distinguish the acts of each Defendant, in the event that Plaintiffs seek to amend this claim. Specifically, as discussed above, Plaintiffs adequately state a claim against Molavi based on his conduct during and after his employment with Plaintiffs. However, as to the remaining Defendants, the Court agrees that Plaintiffs improperly base Plaintiffs' trade secret misappropriation claims on Molavi's conduct, without differentiating what each specific Defendant is alleged to have done.

As to the corporate Defendants, Tung Shin, U.S. Metal, and TSA, Plaintiffs fail to differentiate between the corporate Defendants' conduct and Molavi's conduct. For example, Plaintiffs argue that Tung Shin breached its "contract obligations" by fulfilling orders for U.S. Metal. Opp'n at 7 (citing FAC ¶¶ 47–48). Plaintiffs argue that "Tung Shin knew that Molavi owed duties to Xi Dong," and that Tung Shin hired Molavi, "intending that [Molavi] would take and utilize Plaintiffs' trade secrets." *Id.* Yet Plaintiffs do not actually allege that Tung Shin itself actually used the trade secrets, and Tung Shin's alleged conduct largely states other claims, such as breach of contract, not trade secret misappropriation.

Similarly, throughout the First Amended Complaint, Plaintiffs consistently lump together Liu and Liao, along with their employer, Tung Shin. *See, e.g.*, FAC ¶¶ 32, 36, 71. Despite acknowledging that Liu and Liao hold different positions with Tung Shin, Plaintiffs never once specify which action each is alleged to have taken. For example, Plaintiffs allege that "Liu and Liao approv[ed]" Molavi's renegotiation of the Xi Dong agreement, that "Liu and Liao purchased an annealing furnace," and that "Liu and Liao used the new equipment to secure a $3,000,000

11

order." FAC ¶¶ 32, 36. Thus, the Court agrees that Plaintiffs fail to adequately distinguish "between alleged acts of misappropriation by Mr. Liu, and on the one hand, and Mr. Liao, on the other, or facts supporting their alleged liability as individuals as opposed to the liability of the company for which they work." Mot. at 9.

Therefore, if Plaintiffs choose to amend their trade secret misappropriation claims with respect to Defendants U.S. Metal, TSA, Tung Shin, Liu, and Liao, Plaintiffs must also plead distinct facts as to each Defendant that would give rise to trade secret misappropriation.

**B. Claims Three and Four: Tortious Interference**

In Plaintiffs' third and fourth claims, Plaintiffs allege that they had contracted for preferred pricing with Defendant Tung Shin and to ensure that Tung Shin "would only sell its aluminum products in the United States to Plaintiffs." FAC ¶ 67. Plaintiffs allege that Defendants (other than Tung Shin) interfered with Plaintiffs' actual and prospective contractual benefits under Plaintiffs' agreement with Tung Shin. *Id.* ¶¶ 68–73, 79–80. Specifically, Plaintiffs claim that Defendants leveraged "access to Xi Dong's exclusive pricing structure for all aluminum materials . . . to selectively target and obtain business from companies," which interfered with the exclusivity agreement between Xi Dong and Tung Shin. *Id.* ¶ 68. Based on these allegations, Plaintiffs' third claim asserts "intentional interference with actual and prospective economic advantage," *id.* ¶¶ 66–75, and Plaintiffs' fourth claim asserts "negligent interference with actual and prospective economic advantage," *id.* ¶¶ 76–81. The Court refers to these claims as the "tortious interference" claims.

Defendants move to dismiss the tortious interference claim on two grounds. First, Defendants argue that the tortious interference claims are superseded[4] by CUTSA. Mot. at 10–11. Second, Defendants argue that Plaintiffs otherwise fail to state a claim as to each Defendant. *Id.* at

---

[4] The parties use the term "preempted." As explained in *Silvaco Data Systems v. Intel Corp.*, "[t]he [California] Supreme Court has criticized the use of 'preempt' to describe the supersession of one state law by another." 184 Cal. App. 4th 210, 232 n. 14 (2010) (internal quotations and citations omitted), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011). The *Silvaco* Court went on to state that "[f]or present purposes we favor [the term] 'supersede[.]'" *Id.* Where applicable, the Court follows *Silvaco* and uses the term 'supersede.'

12
Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

11–13. Because the Court agrees with Defendants as to the first argument that the tortious interference claims are superseded by CUTSA, the Court need not address Defendants' second argument. Below, the Court first sets forth the standard for CUTSA supersession and then considers whether Plaintiffs' tortious interference claims are superseded.

### 1. CUTSA Supersession Standard

"Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret. It therefore supersedes claims—including Section 17200 claims—*based on the same nucleus of facts as trade secret misappropriation*." *Waymo*, 256 F. Supp. 3d at 1062 (citations omitted) (emphasis added); Cal. Civ. Code. § 3426.7. However, supersession does not affect "contractual remedies" and "civil remedies" "that are not based upon misappropriation of a trade secret." *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 233 (2010), *disapproved on other grounds by Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011). "At the pleadings stage, the supersession analysis asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Waymo LLC*, 256 F. Supp. 3d at 1062. Put another way, "[t]o survive preemption, [a plaintiff's] claims must 'allege wrongdoing that is materially distinct from the wrongdoing alleged in a CUTSA claim.'" *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018) (quoting *SunPower Corp.*, 2012 WL 6160472, at *9).

As this Court has recognized, suppression based on CUTSA is not strictly limited to "information [that] ultimately satisfie[s] the definition of trade secret." *SunPower*, 2012 WL 6160472, at *7. Instead, "[i]f the basis of the alleged property right is in essence that the information is 'not . . . generally known to the public,' . . . then the claim is sufficiently close to a trade secret claim" to trigger the "preclusive effect of CUTSA." *Id.* at *5; *see also Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 985 (C.D. Cal. 2010) ("[C]UTSA supersedes common law claims based upon the misappropriation of information that does not meet the statutory definition of a trade secret.").

13
Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

### 2. Application to Plaintiffs' Tortious Interference Claims

The Court finds that both tortious interference claims are superseded by the CUTSA because the tortious interference claims significantly overlap with Plaintiffs' trade secret misappropriation claims.

As discussed above, the crux of Plaintiffs' tortious interference claims is that Defendants utilized Plaintiffs' exclusive pricing structure and anodizing process to induce Defendant Tung Shin into breaching Tung Shin's exclusivity agreement with Xi Dong. *See* FAC ¶¶ 36–38, 68. Plaintiffs argue that "[i]rrespective of any misuse of Plaintiff's trade secrets, [Defendants] undermined Tung Shin's contracts . . . [and] interfered with Xi Dong's business by inducing Tung Shin to provide aluminum products to U.S. purchases at prices that Tung Shin agreed to make exclusive to Xi Dong." Opp'n at 8–9.

Yet Plaintiffs' argument fails to address the specific conduct alleged to constitute tortious interference, which the Court finds to be intertwined with the trade secret misappropriation claims. For example, both the trade secret misappropriation and the tortious interference claims allege that Defendants utilized confidential pricing information to "anticipate and undercut Plaintiffs' prices." *Compare* FAC ¶ 16(a) (describing confidential client information, including pricing history, as trade secret), *with id.* ¶ 68 (alleging tortious interference because Defendants used exclusive pricing information to target companies that Plaintiffs had identified as "prospective clients."). Similarly, both the trade secret misappropriation and the tortious interference claims allege that Defendants used Plaintiffs' anodizing process to sell to these customers in violation of the exclusivity agreement. *Compare id.* ¶ 16(b) (describing pre-machined anodizing process as trade secret), *with id.* ¶¶ 68–69 (alleging tortious interference because Defendants induced Tung Shin to produce and sell pre-machined anodized products). Thus, "stripped of facts supporting trade secret misappropriation," the remaining allegations do not constitute any independent injury and thus are superseded by CUTSA. *See Waymo LLC*, 256 F. Supp. 3d at 1062.

Plaintiffs' argument otherwise fail. Plaintiffs rely exclusively on a California Supreme Court case to argue that its tortious interference claims are distinct from any trade secret

misappropriation. Specifically, Plaintiffs quote the California Supreme Court as holding that "[i]ntentionally inducing or causing a breach of an existing contract is therefore a wrong in and of itself." Opp'n at 9 (quoting *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55–56 (1998)). However, this statement by the California Supreme Court merely distinguished interference with prospective economic advantage from interference "causing a breach of an existing contract." *Quelimane*, 19 Cal. 4th at 55–56. *Quelimane* did not involve any trade secrets, and the court therefore did not consider whether the plaintiffs had alleged a claim that was materially distinct from a trade secret misappropriation claim. *See id.* at 33. Accordingly, Plaintiffs do not cite any case law that undermines the Court's conclusion above.

As a result, the Court holds that Plaintiffs' tortious interference claims are superseded by the CUTSA. Moreover, because the Court finds that amendment of this claim would be futile in light of the supersession, the Court DENIES leave to amend this claim. *See Leadsinger*, 512 F.3d at 532.

**C. Claim Five: Breach of Confidentiality Agreement**

Plaintiffs' fifth claim alleges that Defendant Molavi breached a confidentiality agreement by obtaining Plaintiffs' information and using it "for the benefit of himself and Defendants." *See* FAC ¶¶ 82–87. Defendants argue that, because the confidentiality agreement was solely between Plaintiff Primrose and Defendant Molavi, Plaintiff Xi Dong lacks standing to assert a breach. Mot. at 14–15. The Court agrees.

Plaintiffs attach the confidentiality agreement as an exhibit to their Complaint.[5] ECF No. 1, Ex. A. The confidentiality agreement is merely four paragraphs long and specifies that it covers "the course of [Molavi's] employment by Primrose Alloys (the 'Company')." *Id.* The confidentiality agreement's terms refer only to confidential information "of the Company," and

---

[5] Although Plaintiffs also cite this exhibit in the First Amended Complaint, *see* FAC ¶ 22, the exhibit was only attached to the initial complaint, *see* ECF No.1, Ex. A. Regardless, the confidentiality agreement is incorporated by reference because "the document forms the basis of the plaintiff's claim," i.e., for breach of contract. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).

15
Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1   does not mention any other parties to the agreement. *See id.*

2   Given the language of the agreement, the Court agrees with Defendants that Xi Dong does not have standing to assert a breach of the confidentiality agreement. Plaintiffs merely argue that Primrose "[c]learly . . . intended Xi Dong as a third-party beneficiary of the confidentiality agreement." Mot. at 12. However, California law requires a third-party beneficiary to be expressly named in a contract before the beneficiary may enforce the contract. *See, e.g.*, *Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717, 1724 (1994) (citing Cal. Civil Code § 1559). Regardless, Plaintiffs do not even allege that Xi Dong is a third-party beneficiary of the confidentiality agreement, but instead raise this theory for the first time in their opposition. Reply at 11–12; *see* FAC ¶¶ 88–94.

Accordingly, the Court GRANTS Defendants' motion to dismiss this claim with respect to Xi Dong. Because any amendment would be futile given the explicit terms of the confidentiality agreement, the Court DENIES leave to amend this claim. *See Leadsinger*, 512 F.3d at 532.

**D. Claim Six: Breach of Fiduciary Duty**

Plaintiffs' sixth claim alleges that Defendant Molavi breached fiduciary duties owed to Plaintiff Xi Dong, for whom Molavi served as President, and owed to Plaintiff Primrose, for whom Molavi served as Vice President. *See* FAC ¶¶ 18, 89. Plaintiffs explain that the claim "arises from Molavi's formation of U.S. Metal as a competing business, and his diversion of Xi Dong business to U.S. Metal, while an officer of Plaintiffs." Opp'n at 9 (quoting FAC ¶¶ 28–29, 90). Plaintiffs describe three types of conduct through which Molavi allegedly breached his fiduciary duties: "(1) creating competitors with the intention of usurping Plaintiffs' opportunities by siphoning sales meant for Plaintiffs to Molavi's competing companies U.S. Metal and TSA; (2) negotiating with Liu and Liao for access to Plaintiffs' exclusive pricing under the Tung Shin Exclusive; and (3) using Plaintiffs' marketing leads to identify and target new clients." FAC ¶ 90.

Defendants move to dismiss only part of this claim. Specifically, Defendants concede that "Plaintiffs have pled a plausible claim for breach of fiduciary duty as to the creation of U.S. Metal while [Molavi] was still employed by Plaintiffs." Mot. at 14 n.11. Plaintiffs' opposition focuses

16

solely on this concession and reiterates that Molavi's creation of U.S. Metal and diversion of business to U.S. Metal breached his fiduciary duties to Plaintiffs. *See* Opp'n at 9, 11. Thus, Plaintiffs' sixth claim for Molavi's breach of his fiduciary duties survives to the extent that it is based upon Molavi's creation of U.S. Metal while he was still employed by Plaintiffs.

For the remaining conduct alleged in this claim, Defendants move to dismiss on grounds of CUTSA supersession and failure to state a claim. Mot. at 13–14. Plaintiffs' opposition fails to respond to these arguments. *See* Opp'n at 9, 11. For example, Plaintiffs claim that CUTSA does not supersede their claim based on the formation of U.S. Metal as a competing business, which is "irrespective of his use of his employer's trade secrets to compete." *Id.* at 9. However, Defendants already conceded that this conduct is adequate to state a claim for breach of Molavi's fiduciary duties. Mot. at 14 n.11. Plaintiffs' opposition does not otherwise address Defendants' arguments regarding Molavi's other conduct, i.e., "negotiating with Liu and Liao for access to Plaintiffs' exclusive pricing under the Tung Shin Exclusive" and "using Plaintiffs' marketing leads to identify and target new clients." *See* FAC ¶ 90.

Accordingly, the Court hereby GRANTS Defendants' motion to dismiss this claim to the extent that it is based on Molavi's negotiation with Liu and Liao for access to Plaintiffs' exclusive pricing under the Tung Shin Exclusive and Molavi's use of Plaintiffs' marketing leads to identify and target new clients. Moreover, because Plaintiffs waived any argument to the contrary, the Court DENIES leave to amend. *See, e.g.*, *Ali v. Synaptics, Inc.*, No. 19-15589, 2020 WL 1131427 (9th Cir. Mar. 9, 2020) (memorandum) (affirming denial of leave to amend because the plaintiff waived his claim by failing to oppose defendant's argument for dismissal).

**E. Claim Seven: Breach of the Exclusivity Agreement**

In Plaintiffs' seventh claim, Plaintiffs allege that Tung Shin breached its exclusivity agreement with Xi Dong. FAC ¶¶ 95–103. Defendants move to dismiss this claim "[t]o the extent Primrose is joined" in the claim because Primrose was not a party to the exclusivity agreement. *See* Mot. at 15 n.12. Plaintiff does not oppose. Accordingly, the Court GRANTS Defendants' motion to dismiss this claim to the extent that Primrose asserts the claim. Because Plaintiffs have

17

waived any argument to the contrary, the Court DENIES leave to amend this claim as to Primrose. *See, e.g.*, *Synaptics, Inc.*, 2020 WL 1131427 (affirming denial of leave to amend where plaintiff waived argument).

## IV. CONCLUSION

For the foregoing reasons, the Court rules as follows:

- Defendants' motion to dismiss Plaintiffs' first and second claims for trade secret misappropriation under DTSA and CUTSA as to all Defendants other than Molavi is GRANTED with leave to amend;
- Defendants' motion to dismiss Plaintiffs' third and fourth claims for tortious interference is GRANTED without leave to amend. The Court thus dismisses these claims with prejudice;
- Defendants' motion to dismiss Plaintiffs' fifth claim for breach of the confidentiality agreement as to Defendant Xi Dong is GRANTED without leave to amend;
- Defendants' motion to dismiss Plaintiff's sixth claim for breach of fiduciary duty to the extent that it is based on Molavi's negotiation with Liu and Liao for access to Plaintiffs' exclusive pricing under the Tung Shin Exclusive and Molavi's use of Plaintiffs' marketing leads to identify and target new clients is GRANTED without leave to amend; and
- Defendants' motion to dismiss Plaintiffs' seventh claim for breach of the exclusivity agreement as to Defendant Primrose is GRANTED without leave to amend.

Plaintiffs shall file any amended complaint in accordance with this Order within 30 days of this Order. Failure to do so or failure to cure deficiencies identified herein will result in dismissal of the deficient claims with prejudice. Plaintiffs' amended complaint shall also address the issues raised in Defendants Liu and Liao's pending motion to dismiss for lack of personal jurisdiction, ECF No. 58. Failure to do so may result in dismissal of those Defendants with prejudice. Plaintiffs may not add new causes of action or add new parties without stipulation or leave of the Court. Plaintiffs are directed to file a redlined complaint comparing the First Amended Complaint to any amended complaint as an attachment to Plaintiffs' amended complaint.

**IT IS SO ORDERED.**

Dated: March 27, 2020

_Lucy H. Koh_
LUCY H. KOH
United States District Judge