UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NAVIGATION HOLDINGS, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALEX MOLAVI, et al.,<br><br>　　　　Defendants. | Case No. 19-CV-02644-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 70 |

Plaintiffs Primrose Alloys, Inc. and Navigation Holdings, LLC d/b/a Xi Dong Partners ("Xi Dong") (collectively, "Plaintiffs") sue Defendants Alex Molavi; U.S. Metal Imports, LLC; TSA Tung Shin Industrial Co., Ltd.; TSA Metals, Inc.; Sean Liu; Larry Liao; and unknown "Does" (collectively, "Defendants") for misappropriation of trade secrets, breach of a confidentiality agreement, breach of fiduciary duty, and breach of an exclusive supply agreement. Before the Court is Defendants' motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"), ECF No. 67. ECF No. 70. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Defendants' motion.

1

Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT

## I. BACKGROUND

### A. Factual Background

Plaintiff Primrose Alloys, Inc. ("Primrose") is a California corporation with its principal place of business in Burlingame, California. Second Amended Complaint ¶ 1, ECF No. 67 ("SAC"). Plaintiff Xi Dong, a subsidiary of Primrose, is a Delaware corporation with its principal place of business in Burlingame, California. *Id.* ¶¶ 2, 18. Primrose and Xi Dong work in the supply of "high quality aluminum alloy products," *id.* ¶ 13, and broker between alloy manufacturers and customers.

Defendant Alex Molavi was hired by Primrose as a Vice President to establish Xi Dong as a new subsidiary of Primrose. *Id.* ¶ 18. Molavi eventually served as President for Xi Dong, and, in this capacity, Molavi was charged with negotiating agreements with customers and generating new business. *Id.* ¶¶ 18, 19. In August 2014, Molavi negotiated an agreement between Xi Dong and Defendant TSA Tung Shin International Co., Ltd. ("Tung Shin"), a Vietnamese corporation. *Id.* ¶¶ 6, 23. Under the agreement, Tung Shin would be Xi Dong's exclusive supplier in Vietnam for aluminum products, and Tung Shin would only sell Tung Shin's aluminum products to Xi Dong in the United States. *Id.* ¶ 23.

Plaintiffs allege that, while Molavi was still employed with Plaintiffs, Molavi began to siphon business away from Plaintiffs and toward Defendant U.S. Metal Imports, LLC ("U.S. Metal"). *Id.* ¶¶ 5, 27–29. Around September 2017, while Molavi was still employed with Plaintiffs, Molavi allegedly formed U.S. Metal as a California company and listed himself as its Chief Executive Officer. *Id.* ¶ 29. By March 2018, Molavi terminated his employment with Plaintiffs and began working for Tung Shin. *Id.* ¶¶ 30, 31. Allegedly working with Defendant Sheng Rui Liu, Export Sales Manager for Tung Shin, *id.* ¶ 7, and Defendant Chin Ling Liao, owner and President of Tung Shin, *id.* ¶ 8, Molavi began to secure business based upon confidential information and trade secrets Molavi had taken from Plaintiffs, *id.* ¶ 36. In August 2018, Molavi formed TSA Metals, Inc. ("TSA") as a California subsidiary of Tung Shin to serve as Tung Shin's "United States sales arm for customers in the United States." *Id.* ¶¶ 37–38.

### B. Procedural History

On May 15, 2019, Xi Dong filed suit in this Court. ECF No. 1. On August 29, 2019, the parties stipulated to allow Xi Dong to file the First Amended Complaint and add Primrose as a plaintiff. ECF No. 31.

On October 7, 2019, Defendants Molavi, U.S. Metal, Tung Shin, and TSA moved to dismiss the First Amended Complaint. ECF No. 38. The Court granted in part and denied in part Defendants' motion. *See Navigation Holdings, LLC v. Molavi*, No. 19-CV-02644, 2020 WL 1492693, at *1 (N.D. Cal. Mar. 27, 2020), ECF No. 65. Relevant here, the Court dismissed Plaintiffs' claims for misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836(b)) and California Uniform Trade Secrets Act ("CUTSA") (Cal. Civ. Code § 3426 *et seq.*) as to all Defendants other than Molavi *with* leave to amend. Specifically, Plaintiffs' First Amended Complaint asserted direct trade secret misappropriation claims under DTSA and CUTSA as to Molavi and indirect trade secret misappropriation claims under those two statutes as to all other Defendants. In dismissing those trade secrets claims, the Court held that Plaintiffs had failed to state a claim for indirect trade secret misappropriation. *See id.* at *6. A claim of indirect misappropriation, the Court explained, requires factual substantiation of Defendants' knowledge of direct misappropriation. *See id.* Plaintiffs failed to provide that substantiation as to any of the Defendants. Moreover, Plaintiffs "consistently lump[ed] together" Defendants Liu and Liao "[d]espite acknowledging that Liu and Liao hold different positions with Tung Shin." *Id.* at *7. The Court thus ordered Plaintiffs to "plead distinct facts as to each Defendant that would give rise to trade secret misappropriation" if Plaintiffs were to reassert trade secret misappropriation. *Id.* The Court dismissed the remaining claims of the First Amended Complaint—tortious interference, breach of the confidentiality agreement as to Xi Dong (but not Primrose), breach of fiduciary duty as to some of Molavi's conduct, and breach of the exclusivity agreement as to Primrose—without leave to amend. *Id.* at *11 (summarizing dismissed claims).

On April 27, 2020, Plaintiffs filed a Second Amended Complaint, which again asserts that all Defendants misappropriated trade secrets under DTSA and CUTSA. ECF No. 67 at ¶¶ 40–79.

3

Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT

On May 26, 2020, Defendants filed the instant motion. ECF No. 70. Plaintiffs opposed on June 9, 2020. ECF No. 71. Defendants replied on June 16, 2020. ECF No. 74.

## II.     LEGAL STANDARD

### A. Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed under Federal Rule of Civil Procedure 12(b)(6). Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III. DISCUSSION

The SAC asserts five claims: (1) misappropriation of trade secrets under the DTSA, brought by all Plaintiffs against all Defendants, SAC ¶¶ 40–66; (2) misappropriation of trade secrets under the CUTSA, brought by all Plaintiffs against all Defendants, *id.* ¶¶ 67–79; (3) breach of a confidentiality agreement, brought by Primrose against Molavi and unknown "Doe" Defendants, *id.* ¶¶ 80–85; (4) breach of fiduciary duty, brought by all Plaintiffs against Molavi and Doe Defendants, *id.* ¶¶ 86–92; and (5) breach of an exclusive supply agreement, brought by Xi Dong against Tung Shin and Doe Defendants, *id.* ¶¶ 93–101.

Defendants move on two grounds. First, Defendants move to dismiss the trade secret misappropriation claims (claims one and two) against all Defendants other than Molavi. The parties discuss the trade secret Defendants (*i.e.*, all Defendants other than Molavi) in two groups: corporate Defendants (U.S. Metal, Tung Shin, and TSA Metals); then the entities' executives (Liu and Liao). Second, Defendants move to strike the second sentence in SAC ¶ 81 (part of claim three), which discusses Xi Dong's relationship to Primrose and Molavi, for exceeding the scope of

the Court's prior leave to amend. The Court addresses each ground in turn.

### A. Claims One and Two: Trade Secret Misappropriation

Defendants move to dismiss the DTSA and CUTSA claims against (1) corporate Defendants U.S. Metal, Tung Shin, and TSA Metals; and (2) natural persons Liu and Liao. Plaintiffs argue that the corporate Defendants are liable for Molavi's misappropriation of trade secrets under the doctrine of respondeat superior. Liu and Liao, by contrast, are allegedly liable under the doctrine of indirect misappropriation. The Court considers the claims against the corporate Defendants first, followed by the claims against Liu and Liao.

#### 1. Plaintiffs adequately plead that U.S. Metal, Tung Shin, and TSA Metals are liable for misappropriation of trade secrets under respondeat superior.

Defendants argue that Plaintiffs inadequately allege that U.S. Metal, TSA Metals, and Tung Shin are vicariously liable—under the doctrine of respondeat superior—for Molavi's alleged misappropriation of trade secrets. The Court disagrees.

"Defendants do not dispute th[e] general principle" that "an employer may be vicariously liable for an employee's misappropriation of trade secrets." Reply at 3 (citing *Extreme Reach, Inc. v. Spotgenie Partners, LLC*, No. 13-CV-07563, 2013 WL 12081182, at *7 (C.D. Cal. Nov. 22, 2013) (collecting cases)). Whether an employer is vicariously liable turns on whether the employee's trade secret misappropriation "was committed within the scope of employment." *Brain Injury Ass'n of California v. Yari*, No. 19-CV-5912, 2020 WL 3643482, at *6 (C.D. Cal. Apr. 30, 2020). As relevant here, misappropriation is "within the scope of employment when it is performed, at least in part, to benefit the employer, though the employer may forbid it." *Id.* at *5 (quoting *SolarCity Corp. v. Pure Solar Co.*, No. 16-CV-01814, 2016 WL 11019989, at *5 (C.D. Cal. Dec. 27, 2016)).

Defendants argue that Plaintiffs do not even allege respondeat superior liability in the Second Amended Complaint, let alone a factual basis for such liability. *See* Reply at 2. In other words, Plaintiffs' SAC is supposedly "boilerplate." *Id.* To support that characterization, Defendants cite *Arikat v. JP Morgan Chase & Co.*, 430 F. Supp. 2d 1013, 1025 (N.D. Cal. 2006).

6
Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT

In *Arikat*, the court noted as an aside that "[p]laintiffs' introductory allegation that all defendants are each agents and employees of the other is conclusory and similarly unavailing." *Id.*

Defendants' argument is unpersuasive. *Arikat* is far afield from the law and facts here. The *Arikat* court dismissed a Fair Credit Reporting Act claim because plaintiffs did not even allege that defendants were regulated by the Act. *See id.* at 1024–25. Moreover, the *Arikat* plaintiffs' conclusory allegation of agency and employment comprised one sentence devoid of specific facts. *See* Compl. ¶ 5, *Arikat v. JP Morgan Chase & Co.*, No. 3:06-CV-00330, 2006 WL 526684 (N.D. Cal. Jan. 18, 2006), ECF No. 1. Specifically, the Arikat complaint's respondeat superior allegation consisted solely of the following conclusory sentence: "Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned each of the defendants were the agent and employee of each of the remaining defendants and, in doing the things hereinafter alleged, were acting within the course and scope of such agency and employment." *Id.*

By contrast, the SAC pleads specific facts that Molavi misappropriated trade secrets for the benefit of U.S. Metal, Tung Shin, and TSA Metals, and Defendants have not moved to dismiss Plaintiffs' trade secret misappropriation claims against Molavi. *See, e.g.*, *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1188 (W.D. Wash. 2019) ("infer[ring]" respondeat superior liability and denying motion to dismiss trade secret misappropriation claims); *Brain Injury Ass'n*, 2020 WL 3643482, at *6 (same where employee's use of plaintiff's customer list was allegedly "at least in part for the benefit of" employer-defendant); *see also Navigation Holdings*, 2020 WL 1492693, at *6 (noting that Defendants did not move to dismiss the trade secret claims against Molavi). Accordingly, for the purpose of resolving the instant motion to dismiss, the Court assumes Molavi misappropriated trade secrets from Plaintiffs.

Specifically, Plaintiffs allege the following specific acts of trade secret misappropriation as to each corporate Defendant. First, Plaintiffs claim that Molavi formed U.S. Metal and appointed himself Chief Executive Officer. SAC ¶ 29. Molavi then allegedly used proprietary client and pricing information to place anodized tubing orders under U.S. Metal's name. SAC ¶¶ 28, 49, 56.

The tubing orders are alleged with factual specificity.  The tubing orders allegedly were placed on four specific dates (two of which were after the formation of U.S. Metal under California law) and amounted to four different, precise dollar amounts.  SAC ¶ 28.

Second, Plaintiffs claim that Molavi "became Tung Shin's CEO for its United States operations" immediately after resigning from Xi Dong.  SAC ¶ 31.  Molavi then allegedly used trade secrets "to submit quotes directly to Xi Dong customers and prospective customers to provide aluminum products at prices below what they had previously bid for such products to Xi Dong."  SAC ¶ 59.  Specifically, Molavi allegedly diverted a $3 million order from a prospective customer of Plaintiffs' to Tung Shin.  *See* SAC ¶¶ 33, 36, 63, 76.

Lastly, Molavi allegedly formed TSA Metals as a Tung Shin subsidiary and became TSA's President, CEO, and a director.  *See* SAC ¶¶ 4, 6, 37, 60.  TSA Metals' alleged purpose was to poach Plaintiffs' customers in the United States using trade secrets Molavi had misappropriated.  SAC ¶ 37.  TSA's website allegedly states that it is the "US branch" and "US division of Tung Shin Industrial Co. Ltd."  SAC ¶ 38.  Indeed, just before Molavi left Xi Dong for TSA, Molavi allegedly asked Tung Shin to acquire equipment that could produce Plaintiffs' proprietary products for the U.S. market.  SAC ¶ 26.

In sum, Plaintiffs adequately plead that Molavi's alleged misappropriation of trade secrets benefited his employers U.S. Metal, Tung Shin, and TSA Metals.  *See, e.g.*, *Brain Injury Ass'n*, 2020 WL 3643482, at *5 (finding respondeat superior liability when tort is committed, at least in part, to benefit the employer).  Plaintiffs thus plead that U.S. Metal, Tung Shin, and TSA Metal are vicariously liable for Molavi's misappropriation under respondeat superior.  Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs' DTSA and CUTSA trade secret misappropriation claims against U.S. Metal, Tung Shin, and TSA Metals.

### 2. Plaintiffs do not adequately plead that Liu and Liao indirectly misappropriated trade secrets.

The parties do not dispute that for Defendants Liu and Liao, the "central issue" is whether the SAC adequately pleads that Liu and Liao indirectly misappropriated trade secrets through

8
Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT

Molavi. ECF Nos. 71, 74. Defendants argue the SAC inadequately pleads indirect misappropriation. The Court agrees.

As the Court held when dismissing the misappropriation claims against Liu and Liao for the first time, Plaintiffs had to "plead additional facts to substantiate" Liu and Liao's knowledge of Molavi's wrongful conduct. *Navigation Holdings*, 2020 WL 1492693, at *7. Here, Plaintiffs again fail to substantiate Liu and Liao's knowledge of Molavi's direct misappropriation of trade secrets. Plaintiffs' threadbare contrary argument comprises one sentence that cites four allegations from the SAC. *See* Opp. 5 (citing SAC ¶¶ 52–54, 56). None of the allegations shows that Liu and Liao plausibly had reason to know that Molavi misappropriated trade secrets.

The first allegation is that Liu and Liao knew that Molavi served as Xi Dong's president before they hired Molavi. SAC ¶ 52. This allegation at most suggests that Liu and Liao knew that Molavi had access to trade secrets. It does not plausibly claim that Liu and Liu had reason to believe that Molavi would misappropriate those secrets. *See, e.g.*, *SPS Techs., LLC v. Briles Aerospace, Inc.*, No. 18-CV-9536, 2019 WL 1974902, at *13 (C.D. Cal. Mar. 11, 2019) (rejecting the argument that "detailed knowledge of trade secrets necessarily implies some disclosure").

The second allegation is that when Molavi was President of Xi Dong, he negotiated a supply agreement (the Tung Shin Exclusive) with Liu and Liao. SAC ¶ 53. This allegation again says nothing about Liu and Liao's knowledge of Molavi's alleged misappropriation.

The third allegation is that the Tung Shin Exclusive supply agreement's terms state that Xi Dong and Tung Shin "may gain access to 'confidential information regarding the other party's business.'" SAC ¶ 54. Making this allegation relevant to Liu and Liao's liability demands several leaps of logic. The Court would have to assume that Molavi gained access to confidential information through the Exclusive supply agreement; that Molavi misappropriated that information after he left Xi Dong; and that Liu and Liao had reason to believe that Molavi had misappropriated the information.

The last allegation is "that Liu and Liao, in their respective roles at Tung Shin, knew

Molavi" routed orders to Xi Dong's customers though U.S. Metal.  SAC ¶ 56.  This allegation merely conclusorily asserts Liu and Liao's knowledge.  *See, e.g.*, *Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Nor is it clear whether Liu and Liao had distinct knowledge about Molavi's misappropriation.  Rather, the SAC "consistently lump[s] together Liu and Liao . . . [d]espite acknowledging that Liu and Liao hold different positions with Tung Shin." *Navigation Holdings*, 2020 WL 1492693, at *7.

All told, the SAC failed to cure the deficiencies identified by the Court months ago.  As the Court warned, "failure to cure deficiencies identified [in the order] will result in dismissal of the deficient claims with prejudice." *Id.* at *11.  The Court thus finds that amendment would be futile, cause undue delay, and unduly prejudice Defendants.  *See Leadsinger*, 512 F.3d at 532.  The Court dismisses with prejudice Plaintiffs' trade secret misappropriation claims against Liu and Liao.[1]

**B. Claim Three: The Court strikes the second sentence in Paragraph 81 of the Second Amended Complaint.**

Paragraph 81 of the SAC adds a new sentence to Plaintiff's claim for breach of a confidentiality agreement: "Primrose is Xi Dong's corporate parent, and Molavi understood that the Confidentiality Agreement applied to his role as President of Xi Dong."  Defendants argue that this sentence should be struck because the sentence tries to resurrect Xi Dong's breach of confidentiality agreement claim, which the Court had dismissed without leave to amend.  Plaintiffs respond by asserting, without explanation, that the sentence "pertains" to "Plaintiffs' breach of contract claim against Molavi."  Opp. 10.  The Court agrees with Defendants.

In its prior decision, the Court held that "Xi Dong does not have standing to assert a breach of the confidentiality agreement," because only Primrose and Molavi—not Xi Dong—are named in the agreement. *Navigation Holdings*, 2020 WL 1492693, at *9 (citing *Jones v. Aetna Cas. &*

---

[1] Because Plaintiffs fail to state a claim against Liu and Liao, the Court need not address Defendants' argument that the Court lacks personal jurisdiction over Liu and Liao.  *See* Motion 8.

*Sur. Co.*, 26 Cal. App. 4th 1717, 1724 (Ct. App. 1994)). The Court thus "dismiss[ed] this claim with respect to Xi Dong" without leave to amend. *Id.* (citing *Leadsinger*, 512 F.3d at 532).

The new sentence in SAC ¶ 81 disregarded the Court's ruling. The sentence's only discernable purpose is to suggest that Xi Dong was a third-party beneficiary of the confidentiality agreement—the very theory the Court rejected. The sentence "exceed[s] the scope of the Court's leave and [is] ordered stricken." *Brum v. MarketSource, Inc.*, No. 2:17-CV-00241, 2017 WL 4883376, at *4 (E.D. Cal. Oct. 27, 2017).

## IV. CONCLUSION

For the foregoing reasons, the Court rules as follows:

- Defendants' motion to dismiss Plaintiffs' first and second claims for trade secret misappropriation under DTSA and CUTSA as to Defendants U.S. Metal, Tung Shin, and TSA Metals is DENIED.
- Defendants' motion to dismiss Plaintiffs' first and second claims for trade secret misappropriation under DTSA and CUTSA as to Defendants Liu and Liao is GRANTED with prejudice.
- Defendants' motion to strike the second sentence of paragraph 81 of the Second Amended Complaint, which is new and exceeds the scope of the Court's prior leave to amend, is GRANTED.

**IT IS SO ORDERED.**

Dated: August 25, 2020

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

Case No. 19-CV-02644-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COMPLAINT